BILAL A. ESSAYLI (Sate Bar No. 273441)
D. ANDREW BROWN (State Bar No. 273430)
ESSAYLI & BROWN LLP
100 Bayview Circle, Suite 100
Newport Beach, California 92660
Telephone: 949.508.2980
Facsimile: 949.508.2981

Attorneys for Defendant
ABDALLAH OSSEILY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>ABDALLAH OSSEILY<br><br>Defendant. | Case No. 19-CR-00117-JAK<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISCLOSE FISA-RELATED MATERIAL** |

I. INTRODUCTION

The government attempts to sanitize this case, brought by the National Security Division, of any nexuses to the national security tools of the government. There is little doubt that defendant Abdallah Osseily was subject to surveillance under the Foreign Intelligence Surveillance Act ("FISA"). The government does not deny it. There is also little doubt that information developed through the National Security Division about defendant formed the basis for the present prosecution. The government admitted to such at the last hearing before this Court.

The government's arguments that FISA evidence is not relevant to this case are disingenuous. As discussed below, the government has already produced what is presumably FISA evidence to defendant under the Court's protective order. Defendant is an "aggrieved person" as defined by FISA under 50 U.S.C. § 1801(k) as he was subject to electronic surveillance by the government. Defendant has a right to bring his motion for disclosure under 50 U.S.C. § 1806(f), whereby Congress provided that a motion may be brought by an "aggrieved person . . . before any court . . . to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this FISA." Despite the government's arguments otherwise, there is no requirement that defendant receive formal "notice" of surveillance prior to bringing his motion.

Although the government claims it will not use any evidence "derived" from FISA at trial, the Court need not and should not accept that claim at face-value. As the Supreme Court has made clear, the question of whether the government's evidence is tainted is one for the Court to decide, after an adversarial proceeding. *Alderman v. United States*, 394 U.S. 165 (1969). Indeed, the government has a track record of making self-serving claims that its evidence is not tainted in order to prevent defendants from challenging novel and controversial forms of surveillance.[1] It is

---

[1] *See* Charlie Savage, *Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps as Evidence*, N.Y. Times, Oct. 26, 2013, https://www.nytimes.com/2013/10/27/us/federal-prosecutors-in-a-policy-shift-cite-warrantless-wiretaps-as-evidence.html.

clear—based on the discovery already provided by the government—that FISA material is part of this case. Given that threshold fact, the FISA statute provides the roadmap for how the Court should proceed: it should require the government to submit the FISA application(s), order(s), and materials to the Court for a determination of the lawfulness of that surveillance. 50 U.S.C. § 1806(f). In the course of that review, the Court should order disclosure of the FISA materials to the defense because disclosure here is "necessary to make an accurate determination of legality." *Id.* If the surveillance is found unlawful, the Court should then determine what evidence requires suppression, just as it would in any other case. *Id*. § 1806(g); *United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982).

## II.     THE GOVERNMENT HAS PRODUCED FISA MATERIAL IN THIS CASE

Despite the government's suggestion otherwise, defendant can establish that FISA material was obtained and relied on by the government in the present case. On September 25, 2019, the government obtained a protective order from the Court to produce what it considered sensitive materials.[2] (Dkt. 26.) The government subsequently produced to defendant evidence confirming that defendant was subject to electronic surveillance by the government. The evidence contained surreptitious recordings of defendant that could have only been obtained in one of two manners: (1) through a Title III wiretap order; or (2) through a FISA order.

The government has not produced any wiretap applications or orders in this case, which would be required if the government had obtained such an order against defendant. In fact, the government has not provided any orders in this case authorizing electronic surveillance against defendant. As a result, the only possible explanation is that the government obtained a FISA order to surveil defendant, and it has not produced the FISA application or order.

It is also self-evident that the FISA evidence produced under the protective order is relevant to this case. The government produced the sensitive materials while the parties were

---

[2] The protective order prohibits counsel from divulging the contents of the protected information, but does not otherwise prohibit counsel from discussing the general nature of the protected information. (Dkt. 25, ¶ h.)

engaged in plea negotiations, and presumably believed the evidence would be relevant to those discussions. If the evidence had no relevance, or if the government had no intent of using the evidence against defendant at trial, then the government would have had no reason to seek the protective order or to produce the sensitive materials.

A. **Defendant Is An "Aggrieved Person" As Defined By FISA And The Statute Permits Him To Seek Disclosure And Suppression**

The government argues in its opposition that defendant may only seek disclosure or suppression of FISA information if the government provides official notice under 50 U.S.C. § 1806(c) of its intent to use FISA-derived information in court. (Gov't Opp. at 2.) The government, however, ignores the plain language of the statute. Section 1806(f) (emphasis added) provides:

> **(f) In camera and ex parte review by district court.** Whenever a court or other authority is notified pursuant to subsection (c) or (d), or whenever a motion is made pursuant to subsection (e), **or whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States of any State before any court or other authority of the United States or any state to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this Act**, the United States district court or, where the motion is made before another authority, the United States district court in the same district as the authority, shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. In making this determination, **the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.**

FISA defines an "aggrieved person" as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k).[3] There is no doubt that defendant's communications were

---

[3] The government argues, incorrectly, that an "aggrieved person" is one who receives notice that the government intends to use FISA information against him or her in a criminal proceeding. (*See* Gov't Opp. at 2). The statutory definition for an "aggrieved person" contains no such requirement. *See* 50 U.S.C. § 1801(k).

subject to electronic surveillance based on the evidence the government has already produced.

There is no requirement within FISA, or more specifically 50 U.S.C. § 1806(f), that requires an aggrieved person to have been provided with formal notice by the government before seeking judicial review. Rather, the statute recognizes that an aggrieved person may file a motion in a district court to discover or obtain FISA applications and orders "pursuant to any other statute or rule of the United States," and that alone is enough to trigger the judicial review procedures Congress provided in section 1806(f). There are no other qualifiers or conditions on when an aggrieved person may file his motion in district court. Defendant filed his motion under section 1806(f) and cited authority for disclosure under Rule 16, *Brady v. Maryland* and its related cases, the Fourth Amendment, and the Fifth Amendment.

If the filing of a motion were dependent on the government providing notice, as the government suggests, then the government could engage in intrusive surveillance against United States persons and then avoid scrutiny simply by withholding notice—based on narrow and unaccountable claims that its evidence was not tainted by the surveillance. In one of the first FISA cases to reach the courts of appeals, the D.C. Circuit considered exactly the scenario presented by this case and rejected the government's position:

> [E]ven when the Government has purported not to be offering any evidence obtained or derived from the electronic surveillance, a criminal defendant may claim that he has been the victim of an illegal surveillance and seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him. In either event, the Government may forestall the defendant's suppression or discovery motions by filing a petition with the United States District Court in the area where the criminal trial is taking place asking for a determination of the legality of the surveillance.

*Belfield*, 692 F.2d at 146 (citing *Alderman v. United States*, 394 U.S. 165 (1969)). Congress enacted FISA to ensure that the executive branch's surveillance activities were subject to court review, especially in criminal cases. Nothing in FISA gives the government the unilateral power to dictate who may or may not challenge FISA surveillance.

B. **Due Process Does Not Permit The Government To Unilaterally Determine Whether Its Evidence Is Derived From Secret Surveillance**

Due process does not permit the government to resolve core Fourth Amendment suppression issues simply by claiming that its evidence is not "derived from" FISA. As the Supreme Court has made clear, Fourth Amendment suppression questions are notoriously fact-specific and complex—and must be resolved through disclosure and adversarial litigation.

In *Alderman v. United States*, the Supreme Court held that defendants must be permitted to discover information that may be relevant to whether the government's evidence is fruit of the poisonous tree, because only an adversarial process can ensure fair and accurate resolution of this Fourth Amendment issue. 394 U.S. at 168, 180-85. Emphasizing the difficult judgments raised by "cases involving electronic surveillance," the Court said, "in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court." *Id*. at 182 & n.14. Instead, to avoid leaving the trial court and defendants entirely reliant on the government's one-sided claims, adversarial proceedings are necessary "to provide the scrutiny which the Fourth Amendment exclusionary rule demands." *Id*. at 184; *see also Trujillo v. Sullivan*, 815 F.2d 597, 616 (10th Cir. 1987); *Nolan v. United States*, 423 F.2d 1031, 1041 (10th Cir. 1969) ("[A]fter alleging the existence of illegal surveillance . . . the defendant was entitled to inspect all recordings and transcripts made of his conversations[.]").

The lesson of *Alderman* and its progeny is that defendants are entitled to notice of surveillance, *despite* the government's unilateral claims that the information is not "relevant," that an exception to the fruit-of-the-poisonous-tree doctrine should apply, or that its surveillance was lawful. *See, e.g., Kolod v. United States*, 390 U.S. 136 (1968) (per curiam) (rejecting the government's unilateral determination that evidence was not derived from challenged surveillance and requiring adversarial proceedings); *United States v. Alderisio*, 424 F.2d 20, 23 (10th Cir. 1970) (district court erred in denying as immaterial defense requests to examine FBI memoranda concerning surveillance of defendant); *United States v. Apple*, 915 F.2d 899, 910-11 (4th Cir. 1990) (district court abused its discretion in addressing an exception to the fruit-of-the-poisonous-tree doctrine before the government adequately addressed alleged surveillance).

Here, the government declares in its opposition that no evidence "derived" from FISA will be used at trial.[4] The government believes that this conclusory statement ends the analysis and that this Court has "no cause to review" any application for a FISA order. (Gov't Opp. at 5.) The government's unilateral determination of the relevance of FISA evidence is the exact methodology the Supreme Court rejected in *Alderman*. There are many factors to be considered by this Court, through adversarial proceedings, including what evidence the government collected, how it was used by agents, how the government defines the term "derived," and whether any FISA information led to the evidence the government now seeks to use at trial.

### C. Self-Suppression Would Not Eliminate The Need To Determine Whether The Government Engaged In Unlawful Surveillance

The government suggests that it can sidestep the inquiry of the lawfulness of its surveillance by self-suppressing any evidence derived from illegal surveillance. While the government's mootness argument may have merit in other prosecutions, that position does not withstand scrutiny here.

In almost every other prosecution, a defendant would have received the affidavit for any warrants obtained against him. A defendant could assess the factual basis for the probable cause statements sworn to by the agents, and challenge the veracity of those statements through a *Franks* hearing.[5] Here, defendant is denied the opportunity to even review the probable cause statement against him alleging that he is a foreign agent. If defendant had a chance to review that probable cause statement, then defendant could determine whether the government submitted any false

---

[4] Although the government claims it will not reference national security derived evidence at trial, the government has left the door open to introducing national security evidence at trial to rebut defense arguments. In a recent email with government counsel, the government provided notice that it intends to introduce "testimony and evidence regarding the origins and substance of the FBI's investigation." Despite repeated requests, the government has not disclosed to the defense what national security evidence it would use at trial. A copy of the government's email is attached hereto as "Exhibit A."

[5] In *Franks v. Delaware*, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing at the defendant's request on the validity of an affidavit underlying a search warrant "[1] where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56.

1 information to the Foreign Intelligence Surveillance Court ("FISC").

2 The Supreme Court has posited that it has the power to bar conviction of a defendant on due process grounds if government conduct reaches a "demonstrable level of outrageousness." *Hampton v. United States*, 425 U.S. 484, 491-95 (1976). "Outrageous government conduct refers to behavior of investigators." *United States v. Garza-Juarez*, 992 F.2d 896, 903 (9th Cir. 1993). "The government's conduct may warrant a dismissal of the indictment if that conduct is so excessive, flagrant, scandalous, intolerable and offensive as to violate due process; the trial court may also dismiss the indictment in the exercise of general supervisory powers." *Id*. at 904.

Accordingly, if the government engaged in illegal surveillance of defendant, and subsequently used tainted information to form the basis of the present charges, then defendant would certainly have a basis to move for dismissal of the indictment. Suppression of illegally obtained evidence, alone, would be insufficient.

### III. DISCLOSURE AND DEFENSE INPUT IS NECESSARY TO MAKE AN ACCURATE DETERMINATION OF THE LEGALITY OF SURVEILLANCE

The statute directs district courts to "disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance" where such disclosure is necessary to make an accurate determination of the legality of the surveillance. 50 U.S.C. § 1806(f). It is impossible for a court to assess the accuracy of factual allegations in an affidavit without input from the person who was the subject of the surveillance. There is no other way to determine whether the facts presented to the court were truthful, and whether the government's application included material omissions.

Defendant provided several justifications for why disclosure is necessary in his motion. In addition to those reasons previously stated, there is additional concern that inaccurate or deliberately false information about defendant may have been submitted to the FISC. The Office of the Inspector General ("OIG") for the U.S. Department of Justice issued an alarming report on December 9, 2019, documenting a multitude of misrepresentations made by the FBI in FISA

applications to the FISC (the "IG Report").[6] The misrepresentations were aimed at convincing the FISC that sufficient probable cause existed to label a particular United States person as a foreign agent, and to justify the issuance of a FISA surveillance order.

Specifically, the IG Report concluded that "FBI personnel fell short of the requirement in FBI policy that they ensure that all factual statements in a FISA application are 'scrupulously accurate." IG Report at vii. The OIG identified "multiple instances in which factual assertions relied upon in the first FISA application were inaccurate, incomplete, or unsupported by appropriate documentation, based upon information the FBI had in its possession at the time the application was filed." *Id*. One of the most troubling aspect of the report was the discovery that an FBI attorney intentionally provided false information in connection with four applications to the FISC. *Id*. at 8.

Based on the OIG findings, the FISC issued a rare public order calling into question the reliability of every application previously submitted by the FBI. *In re Accuracy Concerns Regarding FBI Matters Submitted To The FISC*, FISA Ct. No. Misc. 19-02 (Dec. 17, 2019).[7] The court emphasized the gravity of the OIG findings and sounded the alarm with respect the integrity of the government's FISA surveillance as a whole:

> The FBI's handling of the [U.S. person's] applications, as portrayed in the OIG report, was antithetical to the heightened duty of candor described above. The frequency with which representations made by FBI personnel turned out to be unsupported or contradicted by information in their possession, and with which they withheld information detrimental to their case, calls into question whether information contained **in other FBI applications is reliable**. The FISC expects the government to provide complete and accurate information in **every** filing with the Court. Without it, the FISC cannot properly ensure that the government conducts electronic surveillance for foreign intelligence purposes only when there is a sufficient factual basis.

*Id*. at 3 (first emphasis added).

In addition to the oversight provided by the FISC, Congress also provided for district court review when a defendant who was the subject of FISA surveillance seeks to challenge those

---

[6] A public version of the report is available at: https://oig.justice.gov/reports/2019/o20012.pdf.

[7] A copy of the FSIC order is attached hereto as "Exhibit B" for reference.

intrusive electronic searches, as is the case here.

Defendant is a U.S. person who resided in the United Sates during the time he was subject to FISA surveillance. Defendant has never been an agent of a foreign power, and the government has not provided any evidence suggesting otherwise, which is a critical factual showing the government must make in its FISA application. Given the recent findings by the OIG and the FISC, defendant has serious concerns that the government may have provided inaccurate or false information to obtain a FISA order against him. The only way to resolve that question is for this Court to review the FISA application and order, and to subject the factual basis of the application to the adversarial process by providing defendant an opportunity to challenge the veracity of the factual assertions made against him.

## IV. CONCLUSION

Without any trial, or adversarial proceedings, the government has condemned defendant as a national security risk. It will not tell him why he is a national security risk, or otherwise provide him an opportunity to clear his name. Instead the government has engaged in scorched earth tactics to prevent defendant from obtaining citizenship by selectively subjecting him to prosecution for the slightest perceived offense; in this case the government's means of choice is alleged bank fraud. This is *not* Due Process under the Constitution, and it is fundamentally unfair.

The Constitution does not have a national security exception for Due Process and this Court should not adopt the government's request for one. Defendant has the right under the Fourth and Fifth Amendments, and the FISA statute, to review the probable cause statement made against him before the Foreign Intelligence Surveillance Court, which formed the basis for the present case. Accordingly, defendant respectfully requests the disclosure of FISA materials.

DATED:  December 2, 2019                ESSAYLI & BROWN LLP

                                        By:   /s/ *Bilal A. Essayli*
                                        BILAL A. ESSAYLI
                                        D. ANDREW BROWN

                                        Attorneys for Defendant
                                        ABDALLAH OSSEILY

Exhibit "A"

**Subject:** Re: U.S. v. Osseily - Motion in limine
**Date:** Friday, January 10, 2020 at 9:54:14 AM Pacific Standard Time
**From:** Bilal A. Essayli
**To:** Salick, Annamartine (USACAC), Makarewicz, Valerie (USACAC)
**CC:** Andrew Brown

Annamartine,

I'm confused by your position. The defense has been seeking and litigating the issue of the origin of the government's investigation since November. The government has refused to produce such evidence. Now you're telling us that the government will introduce evidence concerning the national security "origins and substance" of the FBI's investigation at trial to rebut potential defense arguments. What would this evidence be? And when does the government intend to produce it?

We believe that any reference that Mr. Osseily was subject to a national security investigation by the government at trial would be irrelevant (as you have not produced any national security evidence), highly prejudicial, and grounds for mistrial.

We do not intend to disclose our trial strategy to the government, or otherwise reveal our defense theory.

As for your proposed MIL re FISA, that conversation is premature. We have a hearing on that issue later this month. How the court rules will determine the parameters of the trial. We will comply with all rulings of the court.

Happy to further discuss. Please provide clarification on the government's position.

Thank you,

Bilal

---

**From:** Salick, Annamartine (USACAC) <Annamartine.Salick2@usdoj.gov>
**Sent:** Thursday, January 9, 2020 5:53:15 PM
**To:** Bilal A. Essayli <bessayli@essaylibrown.com>; Makarewicz, Valerie (USACAC) <Valerie.Makarewicz@usdoj.gov>
**Cc:** Andrew Brown <abrown@essaylibrown.com>
**Subject:** RE: U.S. v. Osseily - Motion in limine

Bilal & Andrew,

Thank you for the email.

We do not intend to reference any national security investigation in our case presentation. However, were you to argue, elicit testimony, or present evidence attempting to suggest that the investigators were biased, the investigation was not properly predicated, that our office engaged in a selective or vindictive prosecution, or that we were somehow colluding with USCIS to deny your client an immigration benefit. Obviously, that would open the door for the government to refute your unfounded claims by introducing testimony and evidence regarding the origins and substance of the FBI's investigation.

Based on your statements in court, we anticipate litigating selective prosecutions/misconduct motions but these should be resolved before and after trial, not in the presence of the jury. I hope we can agree that

reference to any national security investigation should not be before the jury in this matter.  Please let me know if you disagree with this approach so we may file a motion.

While we are discussing motions, we intend to file a motion in limine to preclude you from asking questions, referencing, or in any way implying that the defendant was the subject of surveillance conducted pursuant to the Foreign Intelligence Surveillance Act ("FISA").  As you know, the government has affirmed that the present case is not based on information obtained or derived from FISA and that it will not be introducing evidence obtained or derived from FISA.

Please let me us know your position.


Annamartine


---

**From:** Bilal A. Essayli <bessayli@essaylibrown.com>
**Sent:** Thursday, January 9, 2020 10:04 AM
**To:** Salick, Annamartine (USACAC) <ASalick@usa.doj.gov>; Makarewicz, Valerie (USACAC) <VMakarewicz@usa.doj.gov>
**Cc:** Andrew Brown <abrown@essaylibrown.com>
**Subject:** U.S. v. Osseily - Motion in limine

Annamartine,

Before we file any motions, my practice is to confer with counsel to see if we can reach an agreement and avoid litigation. Would the government agree to keep out any reference to national security during trial? Specifically, we would object to any reference in front of the jury that Mr. Osseily was subject to a national security investigation, or that this case was charged by the National Security Division.

Best,

**Bilal A. Essayli** | Partner
Essayli & Brown LLP
100 Bayview Circle, Suite 100 | Newport Beach, California 92660
T: 949.508.2982| F: 949.508.2981 | bessayli@essaylibrown.com


*THIS ELECTRONIC COMMUNICATION IS PRIVILEGED AND CONFIDENTIAL*
*IMPORTANT NOTICE TO EMAIL RECIPIENTS: Do not read, copy, or disseminate this communication unless you are the intended addressee. This email communication contains confidential and/or privileged information intended only for the addressee. Anyone who receives this email by error should treat it as confidential and is asked to call the sender at his or her phone number above, or reply by email. This email transmission may not be secure and may be illegally intercepted. Do not forward or disseminate this email to any third party. Unauthorized interception of this email is a violation of federal law. Any reliance on the information contained in this correspondence by someone who has not entered into a fee agreement with Essayli & Brown LLP is taken at the reader's own risk. The attorneys of Essayli & Brown LLP are licensed to practice law ONLY in California and do not intend to give advice to anyone on any legal matter not involving California law.*

# Exhibit "B"

Filed
United States Foreign
Intelligence Surveillance Court

DEC 17 2019

LeeAnn Flynn Hall, Clerk of Court

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D.C.

---

| | |
|---|---|
| IN RE ACCURACY CONCERNS REGARDING FBI MATTERS SUBMITTED TO THE FISC | Docket No. Misc. 19-02 |

---

**ORDER**

This order responds to reports that personnel of the Federal Bureau of Investigation (FBI) provided false information to the National Security Division (NSD) of the Department of Justice, and withheld material information from NSD which was detrimental to the FBI's case, in connection with four applications to the Foreign Intelligence Surveillance Court (FISC) for authority to conduct electronic surveillance of a U.S. citizen named Carter W. Page.[1] When FBI personnel mislead NSD in the ways described above, they equally mislead the FISC.

In order to appreciate the seriousness of that misconduct and its implications, it is useful to understand certain procedural and substantive requirements that apply to the government's conduct of electronic surveillance for foreign intelligence purposes. Title I of the Foreign Intelligence Surveillance Act (FISA), codified as amended at 50 U.S.C. §§ 1801-1813, governs such electronic surveillance. It requires the government to apply for and receive an order from the FISC approving a proposed electronic surveillance. When deciding whether to grant such an application, a FISC judge must determine, among other things, whether it provides probable cause to believe that the proposed surveillance target is a "foreign power" or an "agent of a foreign power." *See* § 1805(a)(2)(A). Those terms are defined by FISA. *See* § 1801(a)-(b). A finding of probable cause to believe that a U.S. citizen (or other "United States person" as defined at Section 1803(i)) is an agent of a foreign power cannot be solely based on activities protected by the First Amendment. *See* § 1805(a)(2)(A).

---

[1] The government reported to the FISC certain misstatements and omissions in July 2018, *see* Department of Justice Office of Inspector General, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 9, 2019), at 167-68, 230-31 (OIG Report); however, the FISC first learned of the misstatements and omissions discussed herein on December 9, 2019, or, in the case of the conduct of the FBI attorney discussed below, from submissions made by the government on October 25, 2019, and November 27, 2019.

An electronic surveillance application must "be made by a Federal officer in writing upon oath or affirmation." § 1804(a).[2] When it is the FBI that seeks to conduct the surveillance, the Federal officer who makes the application is an FBI agent, who swears to the facts in the application. The FISC judge makes the required probable cause determination "*on the basis of the facts submitted by the applicant.*" § 1805(a)(2) (emphasis added); *see also* § 1804(c) (a FISC judge "may require *the applicant* to furnish such other information as may be necessary to make the determinations required by" Section 1805) (emphasis added). Those statutory provisions reflect the reality that, in the first instance, it is the applicant agency that possesses information relevant to the probable cause determination, as well as the means to potentially acquire additional information.

Notwithstanding that the FISC assesses probable cause based on information provided by the applicant, "Congress intended the pre-surveillance judicial warrant procedure" under FISA, "and particularly the judge's probable cause findings, to provide an external check on executive branch decisions to conduct surveillance" in order "to protect the fourth amendment rights of U.S. persons."[3] The FISC's assessment of probable cause can serve those purposes effectively only if the applicant agency fully and accurately provides information in its possession that is material to whether probable cause exists. Accordingly, "the government . . . has a heightened duty of candor to the [FISC] in *ex parte* proceedings,"[4] that is, ones in which the government does not face an adverse party, such as proceedings on electronic surveillance applications. The FISC "expects the government to comply with its heightened duty of candor in ex parte proceedings at all times. Candor is fundamental to this Court's effective operation . . . ."[5]

With that background, the Court turns to how the government handled the four applications it submitted to conduct electronic surveillance of Mr. Page. The FISC entertained those applications in October 2016 and January, April, and June 2017. *See* OIG Report at vi.

On December 9, 2019, the government filed with the FISC public and classified versions of the OIG Report.[6] The OIG Report describes in detail the preparation of the four applications for electronic surveillance of Mr. Page. It documents troubling instances in which FBI personnel provided information to NSD which was unsupported or contradicted by information in their

---

[2] The application must also be approved by the Attorney General, Deputy Attorney General or, upon designation, the Assistant Attorney General for National Security (who is the head of NSD) "based upon his finding that it satisfies the criteria and requirements" of Title I of FISA. §§ 1801(g), 1804(a).

[3] Docket No. [Redacted], Order and Mem. Op. issued on Apr. 3, 2007, at 14 (footnotes and internal quotation marks omitted), *available at* https://repository.library.georgetown.edu/bitstream/handle/10822/1052774/gid_c_00012.pdf?sequence=1&isAllowed=y.

[4] Docket No. BR 14-01, Op. and Order issued on Mar. 21, 2014, at 8, *available at* https://repository.library.georgetown.edu/bitstream/handle/10822/1052715/gid_c_00098.pdf?sequence=1&isAllowed=y.

[5] Docket No. [Redacted], Mem. Op. and Order issued on Nov. 6, 2015, at 59, *available at* https://repository.library.georgetown.edu/bitstream/handle/10822/1052707/gid_c_00121.pdf?sequence=1&isAllowed=y.

[6] This Order cites the public version of the OIG Report.

2

possession.[7] It also describes several instances in which FBI personnel withheld from NSD information in their possession which was detrimental to their case for believing that Mr. Page was acting as an agent of a foreign power.[8]

In addition, while the fourth electronic surveillance application for Mr. Page was being prepared, an attorney in the FBI's Office of General Counsel (OGC) engaged in conduct that apparently was intended to mislead the FBI agent who ultimately swore to the facts in that application about whether Mr. Page had been a source of another government agency. *See id.* at 252-56. The information about the OGC attorney's conduct in the OIG report is consistent with classified submissions made to the FISC by the government on October 25, 2019, and November 27, 2019. Because the conduct of the OGC attorney gave rise to serious concerns about the accuracy and completeness of the information provided to the FISC in any matter in which the OGC attorney was involved, the Court ordered the government on December 5, 2019, to, among other things, provide certain information addressing those concerns.

The FBI's handling of the Carter Page applications, as portrayed in the OIG report, was antithetical to the heightened duty of candor described above. The frequency with which representations made by FBI personnel turned out to be unsupported or contradicted by information in their possession, and with which they withheld information detrimental to their case, calls into question whether information contained in other FBI applications is reliable. The FISC expects the government to provide complete and accurate information in *every* filing with the Court. Without it, the FISC cannot properly ensure that the government conducts electronic surveillance for foreign intelligence purposes only when there is a sufficient factual basis.

THEREFORE, the Court ORDERS that the government shall, no later than January 10, 2020, inform the Court in a sworn written submission of what it has done, and plans to do, to ensure that the statement of facts in each FBI application accurately and completely reflects

---

[7] *See* OIG Report at 157-59, 365-66 (in September 2016, an FBI agent provided an NSD attorney with information about the timing of Mr. Page's source relationship with another government agency and its relevance to the FISA proffer that was contradicted by a memorandum received from the other agency in August 2016); *id.* at 160-62, 364, 367 (FBI personnel exaggerated the extent to which Christopher Steele's reporting had been corroborated and falsely represented that it had been used in criminal proceedings).

[8] *See, e.g., id.* at 186-90, 368-70 (statements made by Mr. Steele's primary sub-source that undermined Mr. Steele's reporting); *id.* at 168-69, 364, 366-67 (statements made by Mr. Page to an FBI source in August 2016 that he had never met or spoken with Paul Manafort and that Mr. Manafort did not return his emails were first provided to NSD in June 2017; all four applications included reporting that Mr. Manafort used Mr. Page as an intermediary with Russia but did not include those statements by Mr. Page); *id.* at vii, 170-71, 364-65, 367 (statements made by Mr. Page to an FBI source in October 2016 that he had never met with Igor Sechin or Igor Divyekin were first provided to NSD in January 2017; all four applications included reporting that he met with both men in Russia in July 2016 and discussed lifting sanctions against Russia with the former and receiving derogatory information about Hillary Clinton with the latter, but did not include the denials by Mr. Page). Moreover, all four applications omitted statements made by Mr. Steele in October 2016 that detracted from the reliability of another of his sub-sources whose reporting was included in the applications, even though the FBI provided a document to an NSD attorney that included those statements prior to the submission of the first application. *See id.* at 163-64, 364-65, 367.

information possessed by the FBI that is material to any issue presented by the application. In the event that the FBI at the time of that submission is not yet able to perform any of the planned steps described in the submission, it shall also include (a) a proposed timetable for implementing such measures and (b) an explanation of why, in the government's view, the information in FBI applications submitted in the interim should be regarded as reliable.

IT IS FURTHER ORDERED, pursuant to FISC Rule of Procedure 62(a), that the government shall, no later than December 20, 2019, complete a declassification review of the above-referenced order of December 5, 2019, in anticipation of the FISC's publishing that order. In view of the information released to the public in the OIG Report, the Court expects that such review will entail minimal if any redactions.

SO ORDERED.

Entered this 17th day of December, 2019.

_Rosemary M Collyer_
ROSEMARY M. COLLYER
Presiding Judge, United States Foreign
Intelligence Surveillance Court