1  NICOLA T. HANNA
   United States Attorney
2  PATRICK R. FITZGERALD
   Assistant United States Attorney
3  Chief, National Security Division
   ANNAMARTINE SALICK (Cal. Bar No. 309254)
4  Assistant United States Attorney
   Deputy Chief, Terrorism and Export Crimes Section
5  MATTHEW J. JACOBS (Cal. Bar No. Pending)
   Assistant United States Attorney
6  Terrorism and Export Crimes Section
   VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
7  Assistant United States Attorney
   Major Frauds Section
8  1500 United States Courthouse
        312 North Spring Street
9       Los Angeles, California 90012
        Telephone:  (213) 894-3424/2213/0756
10      Facsimile:  (213) 894-2927
        E-mail:      Annamartine.Salick2@usdoj.gov
11                   Valerie.Makarewicz@usdoj.gov
                     Matthew.Jacobs@usdoj.gov
12
   Attorneys for Plaintiff
13 UNITED STATES OF AMERICA

14                    UNITED STATES DISTRICT COURT

15            FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,          No. 19-CR-117-JAK

17          Plaintiff,                OPPOSITION TO THE REQUEST OF THE
                                      AMERICAN CIVIL LIBERTIES UNION AND
18             v.                     THE AMERICAN CIVIL LIBERTIES UNION
                                      OF SOUTHERN CALIFORNIA TO
19 ABDALLAH OSSEILY,                  PARTICIPATE IN ORAL ARGUMENT AT
                                      THE HEARING ON DEFENDANT'S FISA
20          Defendant.               MOTION

21                                    Hearing Date: January 30, 2020
                                      Hearing Time: 2:00 P.M.
22                                    Location:     Courtroom of the
                                                    Hon. John A.
23                                                  Kronstadt

24

25       Plaintiff United States of America, by and through its counsel

26 of record, the United States Attorney for the Central District of

27 California and the undersigned Assistant United States Attorneys,

28 hereby files its opposition to the request of the American Civil

Liberties Union and the American Civil Liberties Union of Southern

California to participate in oral argument at the hearing on

defendant's Motion for Disclosure of FISA-Related Materials.  (Dkt.

69.)

    This opposition is based upon the attached memorandum of points

and authorities, the files and records in this case, and such further

evidence and argument as the Court may permit.

Dated: January 28, 2020          Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 PATRICK R. FITZGERALD
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                 _____/s/_____
                                 ANNAMARTINE SALICK
                                 MATTHEW J. JACOBS
                                 VALERIE L. MAKAREWICZ
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

ii

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2

**I.    INTRODUCTION**

3       On January 22, 2020, the American Civil Liberties Union and the

4  American Civil Liberties Union of Southern California (together, the

5  "ACLU") filed an Application for Leave to File a Brief of Amicus

6  Curiae (the "Application").  (Dkt. 69.)  At the same time, the ACLU

7  moved for leave to participate in oral argument at the hearing on

8  defendant Abdallah Osseily's Motion for Disclosure of FISA-Related

9  Material (the "FISA Motion," Dkt. 33).  (Dkt. 69 at 2.)  On January

10  28, 2020, the Court granted the ACLU's request to file an amicus

11  brief, and deferred ruling on the ACLU's request to participate in

12  oral argument at the FISA Motion hearing.  (Dkt. 77.)

13       The ACLU's request to participate in oral argument at the FISA

14  Motion hearing should be denied for at least the following reasons.

15  *First*, the ACLU's participation is unnecessary because -- as a review

16  of its brief makes clear (Dkt. 69-1) -- its arguments are essentially

17  duplicative of those defendant has already raised.  *Second*, the ACLU

18  is not better-positioned than the parties to assist the Court at the

19  hearing.  *Third*, amici are not entitled to full litigating status of

20  named parties.  *Fourth*, the standard limitations on amici

21  participation are especially appropriate at the district court level

22  in the pretrial context.  For these reasons, the disruption likely to

23  result from the ACLU's active participation in pretrial proceedings

24  would outweigh any value it could add.

25

26

27

28

1

**II.   DISCUSSION**

   **A.   The ACLU's Participation Is Unnecessary Because Its Arguments Are Essentially Duplicative of Defendant's**

   "The term 'amicus curiae' means friend of the court, not friend of a party."  Ryan v. Commodity Futures Trading Comm'n, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J.).

   An amicus brief should normally be allowed [1] when a party
   is not represented competently or is not represented at
   all, [2] when the amicus has an interest in some other case
   that may be affected by the decision in the present case
   . . . or [3] when the amicus has unique information or
   perspective that can help the court beyond the help that
   the lawyers for the parties are able to provide.

Id. (citing Miller-Wohl Co. v. Comm'r of Labor & Indus., 694 F.2d 203, 203 (9th Cir. 1982)).  "Otherwise, leave to file an amicus curiae brief should be denied."  Id. (citing Northern Securities Co. v. United States, 191 U.S. 555, 556 (1903)).[1]

   While "[t]here is nothing wrong, in current practice, with an amicus possessing an interest in the relevant issues, . . . an amicus ought to add something distinctive, rather than serving as a mere conduit for the views of one of the parties."  Wright and Miller, Fed. Prac. & P., 4th ed., § 3975.  In other words, while an amicus curiae need not be entirely disinterested from the issues presented, amicus briefs that are "filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief . . . should not be

---

   [1] Many courts, including in this Circuit, have adopted this standard.  See, e.g., Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999); American Humanist Ass'n v. Maryland-National Capital Park and Planning Com'n, 303 F.R.D. 266 (D. Md. 2014); High Country Conservation Advocates v. United States Forrest Service, 333 F. Supp. 3d 1107 (D. Colo. 2018); Hard Drive Productions, Inc. v. Does 1-1,495, 892 F. Supp. 2d 334 (D.D.C. 2012).

1   allowed.  They are an abuse."  Ryan, 125 F.3d 1063.  These points

2   should inform the Court's consideration of the ACLU's request to

3   supplement its amicus brief by actively participating in oral

4   argument at the FISA Motion hearing.

5        As a review of its brief makes clear, the ACLU's arguments

6   essentially "duplicate the arguments made in [defendant's] brief[s],"

7   and its brief offers no "unique information or perspective that can

8   help the court beyond the help the lawyers for the parties are able

9   to provide."  Ryan, 125 F.3d at 1063.  Because the ACLU's written

10  submission adds little if anything to defendant's arguments, there is

11  nothing to suggest that its participation in oral argument would

12  benefit the Court.

13       A comparison of defendant's filings and the ACLU's brief

14  underscores just how little the latter adds.  Both defendant and the

15  ACLU claim, for example, that FISA and due process require disclosure

16  of FISA materials.  (See, e.g., Reply 2, 6; ACLU Brief ("ACLU Br.")

17  4-6.)  Both defendant and the ACLU rely on some of the same cases to

18  support their arguments.  (See, e.g., Reply 5-7 and ACLU Br. 5, 7

19  (citing United States v. Alderman, 394 U.S. 168 (1972)); Reply 7;

20  ACLU Br. 6 (citing  Kolod v. United States, 390 U.S. 136 (1968))).

21  Both defendant and the ACLU cite the same extra-judicial sources --

22  namely, the 2019 FBI Inspector General Report, the same 2013 article

23  from the *New York Times*, and the same line from the same 1978 Senate

24  Report.  (Motion 5; ACLU Br. 8.)

25       Often the only difference between the arguments made by

26  defendant and the ACLU are semantic.  For example, defendant claims

27  that fruit-of-the-poisonous-tree analyses are "notoriously fact-

28

3

1  specific and complex" (Reply 6), while the ACLU claims that they are

2  "notoriously complex" and "fact-intensive," (ACLU Br. 1-2, 5).

3  Defendant claims that disclosure is "warranted given the complexity

4  of electronic surveillance techniques used today" (Motion 8), while

5  the ACLU claims that disclosure is necessary given "the complexity of

6  today's surveillance tools," (ACLU Br. 11).

7      At times, even these semantic differences disappear, suggesting

8  that arguments in the briefs filed by defendant and the ACLU come

9  from the same source -- a fact which belies the notion that the ACLU

10 possesses "unique information  . . . the lawyers for the parties are

11 [un]able to provide."  Ryan, 125 F.3d at 1063.  For example, in

12 describing the Inspector General Report, defendant states:

13      After belatedly disclosing the backdoor-search problem, the
        NSA struggled for months to "ascertain the scope and
14      causes" of its compliance problems, attributing its failure
        to "the complexity of the issues involved." Id. at 5. This
15      complexity was coupled with, in the FISC's words, "an
        institutional 'lack of candor' on NSA's part." Id. at 19,
16      67-68 & n.57.

17 (Motion 8.)  With one minor exception, the ACLU's formulation of this

18 argument is identical:

19      After belatedly disclosing one of these problems, the NSA
        struggled for months to "ascertain the scope and causes" of
20      its violations, attributing its failure to "the complexity
        of the issues involved." Id. at 5. This complexity was
21      coupled with, in the FISC's words, "an institutional 'lack
        of candor' on the NSA's part." Id. at 19, 67-68 & n.57.
22
   (ACLU Br. 14.)
23
        Finally, the small volume of non-duplicative information in the
24
   ACLU's proposed brief -- such as the page-long summary of FISA's
25
   "Statutory Background" (see ACLU Br. 1-2) -- is not "beyond the help
26
   that the lawyers for the parties are able to provide."  Ryan, 125
27
   F.3d at 1063.
28
                                    4

1    Underscoring this point is the fact that the ACLU devotes 2.5

2    pages of its 18-page proposed brief to describing "examples of novel

3    surveillance techniques."  A cursory review of these descriptions

4    makes clear that the ACLU offers no "unique information or

5    perspective that [could] help the court."  See Ryan, 125 F.3d at

6    1063.  For example, the ACLU identifies "searches of personal

7    devices" as one of the purportedly "novel surveillance techniques" in

8    use today, before explaining that "[s]earches of personal digital

9    devices, such as cell phones and computer hard drives, implicate vast

10   quantities of private information" -- a fact obvious not only to the

11   parties' lawyers and the Court, but to anyone who has ever used a

12   cell phone or computer.  (ACLU Br. 12 (quoting Riley v. California,

13   573 U.S. 373, 396-97 (2014)).)  If this is the type of "expertise"

14   the ACLU believes "will benefit the Court" at oral argument (App. 3),

15   the Court would be better off without it.

16   **B.    The ACLU Is Not Better-Positioned than the Parties to
             Assist the Court at the Hearing**

17

          The ACLU pronounces that its "participation at oral argument

18
     would aid the Court," in part, because it is "well-positioned to

19
     address questions" the Court may ask.  (App. 3.)  The Court should

20
     view this offer of "aid" critically for multiple reasons.

21
          As an initial matter, the ACLU is not a "friend of the Court" in

22
     the traditional sense, but rather a friend of defendant.  Indeed, the

23
     ACLU acknowledges in the first sentence of its Application that it

24
     seeks to appear "in support of [d]efendant," not provide impartial

25
     guidance to the Court.  (App. 2.)  See Cmty. Ass'n for Restoration of

26
     Env't (CARE), 54 F. Supp. 2d at 975 ("Historically, amicus curiae is

27
     an impartial individual who suggest the interpretation and status of

28

                                        5

the law, gives information concerning it, and advises the Court in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another.").

Moreover, the ACLU's belief that it is well-positioned to answer the Court's questions does not mean that the parties are not equally capable of doing so, either orally at the hearing or in post-hearing briefing.  See Ryan, 125 F.2d at 1063 (holding that amicus curiae briefing is warranted "when a party is not competently represented" or "when the amicus has unique information . . . beyond the help that the lawyers for the parties are able to provide").  Indeed, if a legal question arises at the hearing that the parties are unable answer, post-hearing briefing would be preferable to blind reliance on any on-the-spot response from the ACLU.  And for fact-specific questions or mixed questions of law and fact, the parties are better-positioned to respond than the ACLU.

**C.   Amici Lack Full Litigating Status of Named Parties**

Denial of the ACLU's request to participate in the FISA Motion hearing would be proper for the simple reason that the ACLU is not a party to this case and, consequently, lacks full litigating status. Indeed, amici "ha[ve] never been recognized, elevated to, or accorded the full litigating status of a named party or a real party in interest."  United States v. State of Michigan, 940 F.2d 143, 166 (6th Cir. 1991) (citing Miller-Wohl Co., 694 F.2d at 204); see id at 165 ("Amicus curiae may not and, at least traditionally, has never been permitted to rise to the level of a named party/real party in interest.").

1       To the contrary, there has "historically . . . been a bright-

2   line distinction between amicus curiae and named parties/real parties

3   in interest in a case or controversy," State of Michigan, 940 F.2d at

4   166, and "[o]nly a named party or an intervening real party in

5   interest is entitled to litigate on the merits."  Id. (citing Miller-

6   Wohl Co., 694 F.2d at 204); see also Williams v. Diaz, 2006 WL

7   8441761, at *2 (S.D. Cal. Mar. 2, 2006) (same).

8       **D.    Limitations on Amici Participation Are Especially**
        **Appropriate at the District Court Level in the Pretrial**
9       **Context**

10      Adherence to generally recognized limitations on amici

11  participation is especially appropriate in cases, like this one,

12  where amici seek to appear at the district court level in the

13  pretrial context.  Courts have routinely recognized -- indeed, it is

14  usually taken for granted -- that amicus participation is more

15  appropriate at the appellate level, where judges focus predominantly

16  on legal issues and are unconstrained by the time pressures

17  confronting district judges.  See, e.g., Finkle v. Howard County,

18  Md., 12 F. Supp. 3d 780, (D. Md. 2014) ("At the trial level, where

19  the issues of act as well as law predominate, the aid of amicus

20  curiae may be less appropriate than at the appellate level where such

21  participation has become standard procedure."); see also Liberty

22  Lincoln Mercury v. Ford Marketing Corp., 149 F.R.D. 65, 82 (D.N.J.

23  1993) (same); Yip v. Pagano, 606 F. Supp. 1566, 1568 (D.N.J. 1985)

24  (same).

25      The procedural rules governing the different levels of federal

26  practice reflect this reality.  While "Federal Rule of Appellate

27  Procedure 29 outlines the manner and circumstances in which an amicus

28

7

brief may be filed in appellate court, the Federal Rules of Civil

Procedure lack a trial-court counterpart."  California v. Untied

States Dept' of Labor, 2014 WL 12691095, at *1 (E.D. Cal. Jan. 14,

2014) (citing Hoptowit v. Ray, 682 F.2d 1237, 1260 (9th Cir. 1982)).

Notably, of the seven cases the ACLU cites in which it has appeared

as amicus curiae, only one was at the district court level.

Important considerations underlie the limitations on amici

participation.  As Judge Posner noted,

> [J]udges have heavy caseloads and therefore need to
> minimize extraneous reading; amicus briefs, often solicited
> by parties, may be used to make an end run around court-
> imposed limitations on the length of parties' briefs; the
> time and other resources required for the preparation and
> study of, and response to, . . . and the filing of an
> amicus brief is often an attempt to inject interest group
> politics into the federal appeals process.

Voices for Choices v. Illinois Bell Tel. Co., 339 F.3d 542, 544 (7th

Cir. 2003).

It is not necessary to determine whether defendant solicited the

ACLU's participation or whether interest group politics are at play.

What matters is that the considerations relating to judicial economy

outlined in Voices for Choices should be entitled to even greater

weight at the district court level (and especially in the pretrial

context), where judges must contend with an unsettled factual record

and time pressures not generally present in the appellate process.

**III.  CONCLUSION**

Amicus participation is "a privilege within the sound discretion

of the courts."  State of Michigan, 950 F.2d at 165 (internal

citations omitted).  Even in the appellate context, the decision to

permit amicus participation has been characterized as "a matter of

judicial grace," Nat'l Org. for Women, Inc. v. Scheidler, 223 F.3d

8

615, 616 (7th Cir. 2000), and decisions concerning amici

participation will be reversed "only if the district judge has abused

his discretion," <u>Hoptowit</u>, 682 F.2d at 1260.  For the reasons above,

the government respectfully asks the Court to deny the ACLU's request

to participate in oral argument at the hearing on defendant's FISA

Motion.

 Dated: January 28, 2020              Respectfully submitted,

                                      NICOLA T. HANNA
                                      United States Attorney

                                      PATRICK R. FITZGERALD
                                      Assistant United States Attorney
                                      Chief, National Security Division


                                           /s/
                                      ANNAMARTINE SALICK
                                      MATTHEW J. JACOBS
                                      VALERIE L. MAKAREWICZ
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA