1 NICOLA T. HANNA
  United States Attorney
2 PATRICK R. FITZGERALD
  Assistant United States Attorney
3 Chief, National Security Division
  ANNAMARTINE SALICK (Cal. Bar No. 309254)
4 Assistant United States Attorney
  Deputy Chief, Terrorism and Export Crimes Section
5 MATTHEW J. JACOBS (Cal. Bar No. Pending)
  Assistant United States Attorney
6 Terrorism and Export Crimes Section
  VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
7 Assistant United States Attorney
  Major Frauds Section
8 1500 United States Courthouse
       312 North Spring Street
9      Los Angeles, California 90012
       Telephone:  (213) 894-3424/0756/2213
10     Facsimile:  (213) 894-2927
       E-mail:     Annamartine.Salick2@usdoj.gov
11                 Valerie.Makarewicz@usdoj.gov
                   Matthew.Jacobs@usdoj.gov
12
   Attorneys for Plaintiff
13 UNITED STATES OF AMERICA

14              UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,        No. 19-CR-117-JAK

17          Plaintiff,

18          v.                      GOVERNMENT'S OPPOSITION TO THE
                                    BRIEF OF *AMICI CURIAE* AMERICAN
19 ABDALLAH OSSEILY,                CIVIL LIBERTIES UNION AND AMERICAN
                                    CIVIL LIBERTIES UNION OF SOUTHERN
20          Defendant.              CALIFORNIA

21

22

23

24

25      Plaintiff United States of America, by and through its counsel

26 of record, the United States Attorney for the Central District of

27 California and Assistant United States Attorneys Annamartine Salick,

28 Matthew J. Jacobs, and Valerie L. Makarewicz, hereby files its

1  Opposition to the Brief of Amici Curiae American Civil Liberties

2  Union and American Civil Liberties Union of Southern California.

3  This Opposition is based upon the attached memorandum of points and

4  authorities, the files and records in this case, and such further

5  evidence and argument as the Court may permit.

6  Dated: January 29, 2020        Respectfully submitted,

7                                 NICOLA T. HANNA
                                   United States Attorney
8
                                   PATRICK R. FITZGERALD
9                                  Assistant United States Attorney
                                   Chief, National Security Division
10

11                                          /s/
                                   ANNAMARTINE SALICK
12                                 MATTHEW J. JACOBS
                                   VALERIE L. MAKAREWICZ
13                                 Assistant United States Attorneys

14                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                                 PAGE

TABLE OF AUTHORITIES ............................................... ii

I.    Introduction .................................................. 1

II.   Statement of Facts and Procedural History ..................... 2

III.  The ACLU Seeks a Suppression Remedy That is Unavailable to
      the Defendant in this Case .................................... 3

            1.   Governing Fourth Amendment Principles .............. 3

            2.   FISA's Statutory Requirements for Suppression and
                 Disclosure ........................................ 4

            3.   Courts Deny Similar Requests for Disclosure of
                 FISA Materials Upon the Government's
                 Representation that No Such Information will be
                 Used Against the defendant ........................ 10

IV.   Disclosure of FISA Materials and Adversial Proceedings are
      Not Necessary for this Court to Confirm that the Case
      Against Defendant Is Not FISA Derived ........................ 11

V.    The ACLU Provides No Other Reasonable Basis to Justify its
      Request for Relief No Other Court has Granted ................ 15

VI.   Conclusion ................................................... 16

1

**TABLE OF AUTHORITIES**

2 DESCRIPTION                                                                    PAGE

3

Cases

4

755 F.3d 479 .................................................... 1

5

761 F.3d 687 (7th Cir. 2014) .................................... 1

6

7  Alderman v. United States,
8    394 U.S. 165 (1969)................................. 3, 4, 13, 14

   Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,
9    333 U.S. 103 (1948)........................................... 12

10 CIA v. Sims,
11   471 U.S. 159 (1985)........................................... 12

   Davis v. United States,
12   564 U.S. 299 (2011)............................................ 3

13 Franks v. Delaware,
14   438 U.S. 154 (1978).......................................... 16

15 Murray v. Unite States,
     487 U.S. 533 (1988).......................................... 16

16 Snepp v. United States,
17   444 U.S. 507 (1980).......................................... 12

   Taglianetti v. United States,
18   394 U.S. 316 (1969).......................................... 13

19 United States v. Abdi,
20   498 F. Supp. 2d 1048 (S.D. Ohio 2007)..................... 11, 14

   United States v. Abu-Jihad,
21   640 F.3d 102 (2d Cir. 2010).................................... 7

22 United States v. Amawi,
23   2008 WL 183391 (S.D. Ohio Jan. 18, 2008)................. 11, 14

   United States v. Arias-Villanueva,
24   998 F.2d 1491 (9th Cir. 1993).................................. 3

25 United States v. Aziz,
26   228 F. Supp. 2d 363 (M.D. Pa. 2017)........................... 8

   United States v. Belfield,
27   692 F.2d 141 (D.C. Cir. 1982)......................... 8, 9, 15

28 United States v. Damrah,

ii

412 F.3d 618 (6th Cir. 2005)................................... 15

United States v. Daoud,
2014 WL 321384 (N.D. Ill.)..................................... 1

United States v. El-Mezain,
664 F.3d 467 (5th Cir. 2011).................................. 15

United States v. Gallo,
863 F.2d 185 (2d Cir. 1998).................................... 4

United States v. Gibson,
500 F.2d 854 (4th Cir. 1974)................................... 4

United States v. Isa,
923 F.2d 1300 (8th Cir. 1991)................................. 15

United States v. Kahre,
737 F.3d 554 (9th Cir. 2013)................................... 3

United States v. Klimavicius-Viloria,
144 F.3d 1249 (9th Cir. 1998)................................. 13

United States v. Lemonakis,
485 F.2d 941 (D.C. Cir. 1973)................................. 12

United States v. Ott,
827 F.2d 473 (9th Cir. 1987).................................. 15

United States v. Riveria,
2017 WL 1843302 (S.D.N.Y. May 8, 2017)......................... 3

United States v. Thomas,
201 F. Supp. 3d 643 (E.D. Pa. 2016).......................... 5, 6

Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate
of Keffeler,
537 U.S. 371 (2003)............................................ 8

Wong Sun v. United States,
371 U.S. 471 (1963)............................................ 3

Yates v. United States,
135 S. Ct. 1074 (2015) ........................................ 8

Statutes

18 U.S.C. § 3500 ............................................. 13

18 U.S.C. § 3504 .............................................. 5

50 U.S.C. § 1801 .............................................. 1

50 U.S.C. § 1801(k) ........................................... 6

50 U.S.C. § 1806 ................................................. 2

50 U.S.C. § 1821(2) .............................................. 6

50 U.S.C. §§ 1806(b)-(d) ......................................... 5

50 U.S.C. §§ 1806(c) ............................................. 6

Rules

Federal Rule of Criminal Procedure 16(d) ......................... 13

Other Authorities

1978 U.S.C.C.A.N. 3973 ........................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

The American Civil Liberties Union and the American Civil Liberties Union of Southern California (together, the "ACLU") filed an amicus curiae brief in support of defendant Abdallah Osseily ("defendant") seeking extraordinary and unprecedented relief ("the ACLU's Brief").  (CR 78).  The ACLU seeks a remedy no court has granted in the forty years of litigation under the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1801, et seq., ("FISA")[1] and one that is at odds with customary Fourth Amendment principles, FISA's specific proscriptions for the use and litigation of FISA information, and the very cases the ACLU cites to support its untenable position.

First, defendant is not entitled to the disclosure of classified information in order to challenge the provenance of specific evidence the government has affirmed will not be used against defendant. Second, disclosure of FISA materials[2] and adversarial proceedings are

---

[1] The only district court to have ordered disclosure of FISA materials to a defendant was swiftly overturned on appeal, and on remand, reversed itself finding that that disclosure was not, in fact, necessary.  United States v. Daoud, 2014 WL 321384, at *3 (N.D. Ill.), rev'd, 755 F.3d 479, 481-85, reh'g en banc denied, 761 F.3d 687 (7th Cir. 2014).  No other district or circuit court has ever found that disclosure of FISA information or adversarial proceedings were necessary.  Because the district court swiftly reversed its disclosure ruling, for the purpose of this motion, the government does omits the district court's preliminary ruling from its case collection.

[2] The ACLU request the wholesale disclosure of all applicable FISA "applications, orders, and related materials."  (CR 78 at 8). In this motion, the government distinguishes "FISA materials" (i.e. documents related to the authorization and implementation of FISA orders) from FISA "information", i.e., evidence or information obtained pursuant to FISA.

not necessary for the Court to confirm the government's case is not
based on information obtained or derived[3] from FISA.  The Court is
well-equipped to make such a factual determination and, following the
Court's review of the government's CIPA 4 motion, it will be able to
confirm that no information obtained or derived from FISA has been
used against defendant.  Lastly, the ACLU provides no reasonable
basis, and no precedential support, to justify this Court's deviation
from every other district and circuit courts' determination that
disclosure of FISA information is unnecessary and would risk great
harm to national security.

## II.   Statement of Facts and Procedural History

On November 8, 2019, defendant filed a motion for disclosure of
information defendant believes was obtained pursuant FISA.  (CR 33).
The government filed a timely response to defendant's FISA Motion.
(CR 53).  On January 13, 2020, defendant filed a brief in response to
the government's opposition to his FISA Motion ("defendant's Brief").
(CR 57).

While defendant's FISA Motions were pending, on January 17,
2020, the government filed a lengthy classified in camera and ex
parte motion pursuant to § 4 of the Classified Information Procedures
Act ("CIPA"), 18 U.S.C. App. III. (CR 61).  On January 28, 2020, the
ACLU filed an amicus brief largely echoing the claims raised in
defendant's Brief (CR 69, 78) and the Court ordered the government to

---

[3] While neither FISA nor the FISA Amendments Act ("FAA") define
the term "derived from," Congress's use of that term in Title III,
FISA, and the FAA (through its incorporation in 50 U.S.C. § 1806)
strongly suggest that Congress intended to incorporate within FISA
and the FAA's notice requirement the analytical framework of the
"fruits of the poisonous tree" doctrine developed by the Supreme
Court in the context of the Fourth Amendment's exclusionary rule.

1  file a response to the ACLU's amicus brief on January 29, 2019. (CR
2  77).

3  **III. The ACLU Seeks a Suppression Remedy That is Unavailable to the**
   **Defendant in this Case**
4

5  The ACLU's request to "challenge" information defendant believes
6  was obtained pursuant to FISA runs counter to accepted Fourth
7  Amendment principles, Congress' specific proscriptions for litigating
8  the lawfulness of FISA materials, and the holding of every district
9  court and circuit court to have addressed requests by defendants for
10 disclosure of FISA materials.

11                1.    Governing Fourth Amendment Principles
12 The Fourth Amendment protects the right to be free from
13 "unreasonable searches and seizures," and the Supreme Court created
14 the exclusionary rule to be a "a deterrent sanction that bars the
15 prosecution from introducing evidence obtained by way of a Fourth
16 Amendment violation." Davis v. United States, 564 U.S. 299, 232
17 (2011). Fruits of such evidence are excluded as well. Alderman v.
18 United States, 394 U.S. 165, 171 (1969); Wong Sun v. United States,
19 371 U.S. 471 (1963).

20 But a defendant's right to challenge the lawfulness of a search
21 is only triggered when evidence obtained or derived from a search is
22 used against a defendant. See, e.g., United States v. Kahre, 737
23 F.3d 554, 565 (9th Cir. 2013) (affirming district court's conclusion
24 that defendant's motion to suppress evidence from a search was moot
25 because the government elected not to use the seized evidence at
26 trial); United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th
27 Cir. 1993), overruled on other grounds by United States v. Jimenez-
28 Ortega, 472 F.3d 1102, 1103-04 (9th Cir. 2007); see also, United

1  States v. Riveria, 2017 WL 1843302, at *1 (S.D.N.Y. May 8,

2  2017)(denying as moot motion to suppress evidence recovered from

3  allegedly unconstitutional search of defendant's cell phone where

4  government "represent[ed] that it d[id] not intend to offer such

5  evidence at trial").

6  The standing requirement is no different when a defendant seeks

7  to challenge electronic surveillance.  It is well established that in

8  the context of electronic surveillance conducted pursuant to Title

9  III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title

10  III") a defendant lacks standing to challenge such surveillance when

11  the government elects not to introduce information obtained or

12  derived from that surveillance.  See, e.g., United States v. Gibson,

13  500 F.2d 854, 855 (4th Cir. 1974) ("The clear implication of [Title

14  III] is that [a person with standing to challenge the wiretap] should

15  not include one who is not implicated and against whom no one has

16  made a proffer of information derived from the defectively authorized

17  wiretap"); United States v. Gallo, 863 F.2d 185, 192 (2d Cir. 1998)

18  (construing Title III standing in accordance with standing

19  requirements applied to suppression claims under the Fourth Amendment

20  (citing Alderman, 394 U.S. at 175-76 & n. 9).  Because no FISA-

21  obtained or derived material will be used against defendant, there is

22  no FISA materials to disclose and nothing for defendant to seek to

23  suppress.

24          2.   FISA's Statutory Requirements for Suppression and
   Disclosure

25

26  Standing to challenge information a defendant believes was

27  obtained under FISA is no different.  Indeed, Congress incorporated

28  the Fourth Amendment's standing requirements into the FISA statute

and modeled FISA's suppression procedures on those provided under
Title III.   See S. Rep. No. 604, 95th Cong., 1st Sess., Pt. 1 at 56-
58 (1977).   By enacting FISA, Congress sought to achieve parity among
two critical but competing interests – to "reconcile national
intelligence and counterintelligence needs with constitutional
principles in a way that is consistent with both national security
and individual rights." S. Rep. No. 95-701, at 6 (1978) reprinted in
1978 U.S.C.C.A.N. 3973, 3985.

Through FISA, Congress set forth the specific requirements the
government, court, and an aggrieved party must follow to ensure
defendants' rights remain protected while securing classified
information.   Sections 1806(c) and 1825(d) prescribes that the
government may only use information obtained or derived from FISA
upon advance authorization from the Attorney General and following
proper notice to the court and to each aggrieved person against whom
the information is to be used.   50 U.S.C. §§ 1806(b)-(d), 1825(d)-
(e).   Thus, the government need not disclose the fact that a
defendant was surveilled under FISA unless the defendant is an
aggrieved person and the government intends to use information
obtained or derived from against the defendant.   See, e.g., United
States v. Thomas, 201 F. Supp. 3d 643, 648 (E.D. Pa. 2016) (The
government has no obligation to notify a defendant of FISA
surveillance unless certain statutory requirements are met and thus
"many if not most of those who are surveilled under FISA will not be
entitled to notice.")[4]

---

[4] Reliance on 18 U.S.C. § 3504 is similarly misplaced.   Section
3504 only applies where a defendant seeks suppress evidence on the
grounds that it was unlawfully obtained.   Here, the government has

5

Similarly, FISA proscribes a suppression procedure to resolve allegations of unlawful surveillance.  But this suppression remedy, as in the traditional Fourth Amendment context, is only available to an "aggrieved person"[5] when five specific criteria are met: (1) "intends to enter into evidence or otherwise use or disclose" (2) "against an aggrieved person" (3) in a "trial, hearing or other proceeding in or before any court" (4) any "information obtained or derived from" (5) an "electronic surveillance [or physical search] of that aggrieved person."  50 U.S.C. §§ 1806(c); 1825(d).  The statute is clear: an aggrieved party only has standing to challenge the lawfulness of FISA collection when the government elects to use evidence obtained or derived from that FISA collection against that aggrieved person.  See, e.g., United States v. Thomas, 201 F. Supp. 3d 643, 648 (E.D. Pa. 2016) (the government has no obligation to notify a defendant of FISA surveillance unless certain statutory requirements are met and thus "many if not most of those who are surveilled under FISA will not be entitled to notice.").

Following notice, Section 1806(f) provides an ex parte and in camera mechanism for adjudicating whether that information was lawfully obtained or instead must be suppressed.  FISA's language is unequivocal:  disclosure of warrant applications and supporting

---

confirmed that no information obtained or derived from FISA will be introduced against defendant thus § 3504 would not apply even if surveillance were unlawful.

[5] FISA defines an "aggrieved person" to be the target of electronic surveillance or "any other person whose communications or activities were subject to electronic surveillance" 50 U.S.C. § 1801(k), as well as a "person whose premises, property, information, or material is the target of physical search" or "whose premises, property, information or material was subject to physical search," 50 U.S.C. § 1821(2).

6

materials is the exception, not the rule.  See, e.g., United States
v. Abu-Jihad, 640 F.3d 102, 129 (2d Cir. 2010) ("disclosure of FISA
materials is the exception and ex parte, in camera determination is
the rule" (internal citations omitted).

Congress specifically intended to ensure that, even when Section
1806(f) could otherwise apply, the government would be able to
"prevent[]" the court's "adjudication of legality" governed by
Section 1806(f) by simply "choos[ing]" to "forgo the use of the
surveillance-based evidence" (e.g., in a prosecution) and thereby
avoid risking that Section 1806(f)'s procedures "would damage the
national security." S. Rep. No. 95-701, at 65 (1978).

Section 1806(f) applies when: (1) the government notifies an
aggrieved person under Section 1806(c) or (d) of its intent to use
FISA information "against an aggrieved person" in the proceeding; (2)
when the aggrieved "person against whom" the FISA information will be
used files a motion under 1806(e) to suppress; or (3) "whenever any
motion or request is made by an aggrieved person pursuant to any
other statute or rule of the United States" to "discover or obtain
applications or orders or other materials relating to electronic
surveillance or to discover, obtain, or suppress evidence or
information obtained or derived [from FISA]" §§ 1806(f), 1825(g).

Rather than serving as a broad, free-standing vehicle for
discovery and relief on the merits, circumstance (3) is simply a
backstop to circumstances (1) and (2), in which the government seeks
to use electronic- surveillance information against an aggrieved
person in legal proceedings or the aggrieved person himself seeks to
suppress such use.  Like its two antecedents, circumstance (3)
applies only when the government seeks to use or disclose information

obtained or derived from electronic surveillance against an aggrieved person in such proceedings.  See Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 384-85 (2003) ("[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."); Yates v. United States, 135 S. Ct. 1074, 1085 (2015) (explaining that this interpretive principle avoids "giving unintended breadth to the Acts of Congress").  Circumstance (3) accordingly ensures that, whenever an aggrieved person creatively invokes any statute or rule other than the suppression mechanism set forth in Section 1806(e) to achieve a similar effect, that person may not thereby evade the protective provisions of Section 1806(f) and obtain adversarial adjudication in open court.  See S. Rep. No. 95-701, at 63 (explaining that circumstance (3) "prevent[s] the carefully drawn procedures in subsection ([f]) from being bypassed by the inventive litigant using a new statute, rule, or judicial construction").  In this way, Section 1806(f) does not provide any greater entitlement to seek FISA materials than defendants otherwise would have.[6]

Further, the defendant's reliance on United States v. Belfield, 692 F.2d 141 (D.C. Cir. 1982), in support of his motion is misplaced. The defendant cites Belfield for the proposition that, where the

---

[6] The ACLU's reliance on § 1806(g) is similarly misplaced and § 1806(g) provide no additional entitlement to seek FISA materials than defendants otherwise would have .  United States v. Aziz, 228 F. Supp. 2d 363, 368 (M.D. Pa. 2017)("The due process exceptions of §§ 1806(g) and 1825(h) limit permissible discovery to that which is constitutionally mandated, such as the obligations articulated in Brady v. Maryland.").

1  government will not "be offering any evidence obtained or derived
2  from the electronic surveillance, a criminal defendant may claim that
3  he has been the victim of an illegal surveillance and seek discovery
4  of the logs of the overhears to ensure that no fruits thereof are
5  being used against him." 692 F.2d at 146.  In Belfield, after the
6  defendants' convictions in D.C. Superior Court, the D.C. Circuit
7  upheld the District Court's decision and interpreted § 1806 as
8  restricting not only disclosure of the FISA materials presented to
9  the Foreign Intelligence Surveillance Court, but also discovery of
10 what it called "the logs of the overhears," or the information
11 collected pursuant to FISA.  The Court stated that the government
12 "may forestall" the defendant's motion in D.C. Superior Court seeking
13 discovery of FISA information "by filing a petition with the United
14 States District Court in the area where the criminal trial is taking
15 place asking for a determination of the legality of the
16 surveillance," along with a declaration and claim of privilege by the
17 Attorney General.  Id.  Thus, in essence, the Court in Belfield
18 endorsed the approach used by the government in that case, which was
19 to limit the defendant's access to potentially discoverable FISA
20 collection by seeking a determination under § 1806 both that the FISA
21 collection was lawful, and that the fruits of the collection need not
22 be turned over to the defense.

23     In this case, however, the government is not seeking to use
24 Section 1806 to forestall discovery of information obtained or
25 derived from FISA.  Instead, to the extent that there exists FISA
26 information relevant to this case, which the government does not
27 concede, the government will comply with any discovery obligations
28 related to any such information. Conversely, to the extent that there

1    exist any FISA materials (e.g., applications and orders) relating to
2    this case, which the government also does not concede, the
3    defendant's motion is an attempted end-run around Section 1806's
4    procedural safeguards.

5         Thus, the fact that FISA "contemplates" a narrow exception to
6    the district court's exclusive ex parte and in camera of FISA
7    materials and the fact that no district or circuit court in the past
8    40 years of FISA litigation has found it necessary to disclose FISA
9    information a defendant, further undercut the ACLU's reliance on
10   § 1806(f) (or any other provision) to justify disclosure here.  As
11   detailed below, nothing in the ACLU (or defendant's new claim)
12   justifies such an extraordinary remedy where the court is well-
13   equipped to make such a determination on its own.

14        3.   Courts Deny Similar Requests for Disclosure of FISA
                Materials Upon the Government's Representation that No
15              Such Information will be Used Against the defendant

16        Applying standard Fourth Amendment principles to FISA
17   litigation, district courts have uniformly denied defendants' motions
18   for suppression and disclosure of FISA materials upon the
19   government's representation that information obtained or derived from
20   FISA will not be used against the defendant.  For example, just a few
21   months ago, a district court in New York denied a defendant's motion
22   for disclosure of the specific surveillance methods the government
23   employed in order to "challenge the lawfulness of that surveillance"
24   as "moot" upon the government's representation that no such
25   information "or evidence obtained or derived therefrom" would be used
26   against defendant at trial.  United States v. Saipov, 17-CR-722, Dkt.
27   212 at 10 n.6 (S.D.N.Y Oct. 29, 2019).

28

All other district courts to address this issue have also denied defendants' motions for suppression and disclosure of FISA materials where the government has represented that no such information will be used against the defendant.  See United States v. Qazi, 12-CR-60298, Dkt. 259 at *5 (S.D. Fla. Oct. 29, 2014 (denying as moot motion to disclose and suppress evidence related to FISA because "the government does not intend to introduce or otherwise use or disclosure evidence obtained or derived" from FISA); United States v. Amawi, 2008 WL 183391, at *2 (S.D. Ohio Jan. 18, 2008) (denying motion as moot based on government's representation that it did not intend to use FISA information in its case-in-chief); United States v. Abdi, 498 F. Supp. 2d 1048, 1087 (S.D. Ohio 2007) (same); see also DAVID S. KRIS AND J. DOUGLAS WILSON, NATIONAL SECURITY INVESTIGATIONS AND PROSECUTIONS, at 30:4 (2d ed. 2012) (where the government does not intend to use FISA information, "the defendant would be unable to meet the requirement that evidence 'is to be' introduced 'against' him and the motion would therefore be denied or dismissed"). Accordingly, the defendant's motion is moot.

**IV.  Disclosure of FISA Materials and Adversial Proceedings are Not Necessary for this Court to Confirm that the Case Against Defendant Is Not FISA Derived**

The district court is well-equipped to confirm, based on its review of the government's ex parte submissions, that the government's case against defendant is not based on information obtained or derived from FISA.  Moreover, the ACLU presents no legitimate grounds to warrant this Court breaking with all other courts to order the disclosure of FISA materials or adversial proceedings.

First, as the ACLU acknowledged, "the 'derived' analysis is often highly-fact specific." (CR 78 at 14). FISA materials, including applications for FISA warrants submitted to the Foreign Intelligence Surveillance Court ("FISC") and FISC orders contain classified and sensitive information. In this case, the government asserted a classified information privilege over information the government seeks to withhold from defendant, pursuant to CIPA § 4, and thoroughly detailed the harm to national security disclosure of such information is likely to cause. (CR 61).[7]

Second, contrary to the ACLU's assertions, the government is not "unilaterally dictat[ing]" whether evidence is "derived" from FISA. (CR 78 at 12). Rather, the government submitted a lengthy CIPA § 4 brief for the Court's review that detailed the government's extensive search for potentially discoverable information, the government's painstaking review of potentially discoverable information, and any conclusions by the government's conclusion that the criminal

---

[7] Courts consistently recognize the government's compelling need to prevent the disclosure of classified information. See, e.g., CIA v. Sims, 471 U.S. 159, 175 (1985) (citing the government's "compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service") (quoting Snepp v. United States, 444 U.S. 507, 509 n.3 (1980) (per curiam)); accord Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Accordingly, federal courts have long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." United States v. Lemonakis, 485 F.2d 941, 963 (D.C. Cir. 1973).

prosecution of defendant is not based on information obtained or derived from FISA.

Third, district courts – especially this Court in light of its experience – are well-equipped and sufficiently experienced to review materials in camera and ex parte to determine discoverability. Indeed, district courts regularly review in camera and ex parte government submissions under the Jencks Act, 18 U.S.C. § 3500, and Federal Rule of Criminal Procedure 16(d).  In the context of classified information, CIPA details the procedure a court must undertake to review classified information and determine discoverability.  18 U.S.C. App. III. § 4.  Defendants are not entitled to participate in these procedures and courts have regularly upheld the constitutionality of such relief.  See, e.g., United States v. Klimavicius-Viloria, 144 F.3d 1249, 1261 (9th Cir. 1998); see also Taglianetti v. United States, 394 U.S. 316, 317 (1969) (an adversary proceeding and full disclosure are not necessary "for resolution of every issue raised by an electronic surveillance").

Fourth, the ACLU's reliance on Alderman, 394 U.S. 165, is misplaced and, indeed, the record shows that the government has indeed complied with Alderman's holding.  (CR 78 at 5-6).  The ACLU argues that disclosure of all FISA applications, FISC orders, and minimization procedures defendant believes authorized FISA surveillance of him and defendant's participation in "adversial proceedings" are "necessary" under Alderman, because the Court "recognized the inherent dangers of allowing the government to conclusively determine whether evidence is 'derived from' controversial surveillance."  (Id. at 12).  This is wrong.  In Alderman – a case that preceded the FISA statute and Congress'

13

prescription of specific requirements for district courts to follow
in determining the lawfulness of FISA surveillance – the Court
rejected the government's request to first present the "content of
conversations [allegedly] illegally overheard by surveillance" to the
district court for its ex parte and in camera review.   The Court
found that disclosure of phone calls was necessary because only the
defendant could provide the court with the "intimate facts" necessary
to certain "phras[es], [] chance remarks[s]," or even "the manner of
speaking or using words."  Alderman, 394 U.S. at 181-82.

Here, the ACLU mischaracterizes Alderman to argue that
information regarding the provenance and implementation of lawful
surveillance orders rather than the content or information collected
(allegedly) under FISA.   (CR 78 at 12-14).   Alderman ordered the
disclosure of the "content" of surveillance, not the underlying
applications and orders authorizing that surveillance.   Rather, the
ACLU's brief (and defendant's motions) evince the government's
compliance with Alderman – defendant is in possession of the
"content" Alderman ordered disclosed.

Lastly, as detailed above, district courts regularly rely upon
the government's representation that a case is not derived from FISA
to dismiss defendants' motions for disclosure and suppression.   See,
e.g., Saipov, 17-CR-722, Dkt. 212 at 10 n.6 (S.D.N.Y. Oct. 29, 2019);
Qazi,12-CR-60298, Dkt. 259 at *5 (S.D. Fla. Oct. 29, 2014; Amawi,
2008 WL 183391, at *2; Abdi, 498 F. Supp. 2d at 1087.   The ACLU cites
no authority to justify the Court deviating from this principle in
this matter.

**V.    The ACLU Provides No Other Reasonable Basis to Justify its Request for Relief No Other Court has Granted**

The ACLU dedicates a large portion of its motion to hurling, scatter-shot, a litany of accusations against the government broadly, none of which are applicable here.  (See, e.g., CR 78 at 14-24) (discussing the December 2019 Inspector General Report, issues related to FISA notice practices in 2012).   Based on the standing issues explained above, the Court need not reach any of these issues, none of which are applicable here.

Similarly, the ACLU describes "examples" of "novel or complex" surveillance techniques the ACLU claims may be at issue in this case that, according to the ACLU, "plainly" require disclosure of FISA materials.  (CR 78 at 11-13).  All other district courts assessing defendants' motions for FISA disclosure have been done so without requiring disclosure of FISA materials.  There is no reason to doubt this Court's ability to do the same here.

The ACLU's argument that defendant's Fifth Amendment due process rights will be violated absent an order of disclosure also falls flat.  FISA's ex parte and in camera review has withstood every Fourth, Fifth, and Sixth Amendment challenge levied against it, and nothing the ACLU cited in its brief disturbs this conclusion.  See, e.g., United States v. Ott, 827 F.2d 473, 476-77 (9th Cir. 1987) United States v. El-Mezain, 664 F.3d 467, 567 (5th Cir. 2011); United States v. Damrah, 412 F.3d 618, 625 (6th Cir. 2005); United States v. Isa, 923 F.2d 1300, 1306-07 (8th Cir. 1991); Belfield, 692 F.2d at 148-49.

Here, the ACLU relies upon "the Fifth Amendment's Due Process Clause" to support the proposition that "defendants must have a

meaningful opportunity to pursue suppression, which is the primary means of enforcing the Fourth Amendment's guarantees." (CR 78 at 22-25). Reliance on canonical Fourth Amendment decisions, such as Franks v. Delaware, 438 U.S. 154 (1978) and Murray v. Unite States, 487 U.S. 533 (1988), does not support the ACLU's disclosure requests, because, for all of the reasons detailed above, defendant is not entitled to suppression or disclosure of classified information when the government has responded that no information obtained from FISA will be used against him.

## VI.   Conclusion

The court has before it the information necessary to confirm that nothing in the government's case against defendant was based on information obtained or derived from FISA. Nothing the ACLU has presented justifies the extraordinary relief the ACLU seeks — relief that no court has ever ordered. Nor does the ACLU raise any new facts or allegations that were not presented to all of the district courts that considered the same claims and determined that defendants were not entitled to disclosure of FISA materials or to participate in adversial proceedings. As the court will confirm during its review of the government's CIPA § 4 motion, the government has

//

//

scrupulously complied with its discovery obligations and the
classified information presented for the court's review confirms that
no information obtained or derived from FISA will be used against
defendant in this criminal proceeding.

Dated: January 29, 2020          Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 PATRICK R. FITZGERALD
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                      /s/
                                 ANNAMARTINE SALICK
                                 MATTHEW J. JACOBS
                                 VALERIE L. MAKAREWICZ
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA