NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
ANNAMARTINE SALICK (Cal. Bar No. 309254)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
MATTHEW J. JACOBS (Cal. Bar No. Pending)
Assistant United States Attorney
Terrorism and Export Crimes Section
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-3424/2213/0756
     Facsimile:  (213) 894-2927
     E-mail:     Annamartine.Salick2@usdoj.gov
                 Matthew.Jacobs@usdoj.gov
                 Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>ABDALLAH OSSEILY,<br><br>        Defendant. | No. 19-CR-117-JAK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Annamartine Salick,
Matthew J. Jacobs, and Valerie L. Makarewicz, hereby files its

Opposition to Defendant's Supplemental Brief.  This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 7, 2020          Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 PATRICK R. FITZGERALD
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                 _____/s/_____
                                 ANNAMARTINE SALICK
                                 MATTHEW J. JACOBS
                                 VALERIE L. MAKAREWICZ
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

TABLE OF AUTHORITIES...............................................ii

I.   Introduction...................................................1

II.  Statement of Facts and Procedural History.....................1

III. ARGUMENT.......................................................2

    A.   Defendant Lacks Standing to Litigate the Lawfulness of
        Surveillance He Believes Was Conducted Under FISA.........2

        1.   Basic Fourth Amendment Principles Forestall
            Defendant's Fishing Expedition.......................2

        2.   Courts Have Uniformly Denied as Moot Motions to
            Litigate the Lawfulness of FISA Searches Where
            the Government Elects Not to Use FISA Information....4

        3.   Defendant Is Not Entitled to an Advisory Opinion
            – the Logical Consequence of his FISA Motion........7

    B.   No Remedy Defendant Purportedly Seeks Will Be Served
        by Disclosure of FISA Materials...........................8

        1.   The Government's Compliance with Constitutional
            and Statutory Discovery Obligations Are
            Unaffected by FISA Litigation.......................8

        2.   Disclosure of FISA Materials Will Not Remedy
            Purported Violations of the Fourth and Fifth
            Amendments..........................................9

        3.   Disclosure of FISA Materials Will Not Assist
            Defendant in an Outrageous Government Conduct
            Motion.............................................10

IV.  Conclusion....................................................12

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE(S)

Cases

<u>Alderman v. United States</u>,
   394 U.S. 165 (1969) .................................................. 3

<u>Brown v. United States</u>,
   411 U.S. 223 (1973) .................................................. 3

<u>Coal. for a Healthy California v. F.C.C.</u>,
   87 F.3d 383 (9th Cir. 1996) ....................................... 7, 8

<u>Elkins v. United States</u>,
   364 U.S. 206, (1960) ................................................. 3

<u>Fazaga v. FBI</u>,
   916 F.3d 1202 (9th Cir. 2019) ........................................ 5

<u>FCC v. Pacifica Found.</u>,
   438 U.S. 726, (1978) ................................................. 7

<u>Greene v. United States</u>,
   454 F.2d 783 (9th Cir. 1971) ..................................... 11, 12

<u>Hampton v. United States</u>,
   425 U.S. 484, (1976) ................................................ 11

<u>Simmons v. United States</u>,
   390 U.S. 165 (1969) .................................................. 3

<u>United States v. Abdi</u>,
   498 F. Supp. 2d 1048 (S.D. Ohio 2007) ............................... 5

<u>United States v. Amawi</u>,
   2008 WL 183391 (S.D. Ohio Jan. 18, 2008) ............................ 5

<u>United States v. Arias-Villanueva</u>,
   998 F.2d 1491 (9th Cir. 1993) ....................................... 4

<u>United States v. Calandra</u>,
   414 U.S. 338 (1974) .................................................. 3

<u>United States v. Kahre</u>,
   737 F.3d 554 (9th Cir. 2013) ........................................ 4

<u>United States v. Klimavicius-Viloria</u>,
   144 F.3d 1249 (9th Cir. 1998) ....................................... 9

<u>United States v. Ramirez</u>,
   710 F.2d 535 (9th Cir. 1983) ....................................... 11

United States v. Riveria,
    2017 WL 1843302 (S.D.N.Y. May 8, 2017) ........................... 4

United States v. Sedaghaty,
    728 F.3d 885 (9th Cir. 2013) ...................................... 9

United States v. Spanjol,
    720 F. Supp. 55 (E.D. Pa. 1989) ................................... 6

United States v. Thompson,
    752 F. Supp. 75 (W.D.N.Y. 1990) ................................... 6

United States v. Twigg,
    588 F.2d 373 (3d Cir. 1978) ...................................... 11

Weeks v. United States,
    232 U.S. 383 (1914) ............................................... 3

Wong Sun v. United States,
    371 U.S. 471 (1963) ............................................... 3

Statutes

50 U.S.C. § 1801(k) ................................................... 4

50 U.S.C. § 1806(e) ................................................... 7

50 U.S.C. § 1806(f) ................................................... 8

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Defendant Abdallah Osseily ("defendant") seeks extraordinary relief and a remedy no court has granted in the forty years of litigation under the Foreign Intelligence Surveillance Act of 1978 ("FISA").  In short, defendant believes "FISA materials"[1] exist and seeks to move for their disclosure even though the government has made clear that information obtained or derived pursuant to that statute has not been and will not be used against him in this case.

Defendant fails to articulate a case or controversy that this Court is constitutionally empowered to adjudicate.  Defendant cannot establish any injury or prejudice, and the remedy he seeks – disclosure of FISA materials defendant believes exist – will not assist defendant in curing any of the claims he, purportedly, seeks to resolve.  Rather, defendant seeks to litigate an issue not before the Court to obtain an advisory opinion this Court is not permitted to render.  Moreover, defendant offers no precedent or rationale to justify this Court's deviation from every other district and circuit courts' determination that disclosure of FISA information is unnecessary and would risk great harm to national security.

### II.   Statement of Facts and Procedural History

On November 8, 2019, defendant filed a motion for disclosure of FISA materials.  (CR 33).  The government filed an opposition making

---

[1] Defendant seeks the wholesale disclosure of all "FISA orders, applications, [and] minimization procedures." (CR 33 at 3).  In this Opposition, the government distinguishes "FISA materials" (i.e., the applications, orders, and other materials relating to the authorization of surveillance or search) from FISA "information," (i.e., evidence or information obtained pursuant to electronic surveillance and physical searches conducted pursuant to FISA).

1

clear the charges against defendant did not rest on evidence obtained via FISA and defendant filed a brief in response. (CR 53, 57). On January 28, 2020, the American Civil Liberties Union ("ACLU") filed an amicus brief in support of defendant's motion and the next day the government filed its opposition to the ACLU's brief. (CR 78, 80). Following a hearing on defendant's FISA motion on January 30, 2020, defendant filed a supplemental brief under seal pursuant to the Court's order. (CR 88). (Defendant's motion and supporting briefs requesting disclosure of FISA materials, and the ACLU's brief in support of defendant's motions, are referred to collectively as "defendant's FISA Motions").

Separately, the government has filed in camera and ex parte a motion pursuant to § 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III (the "CIPA Motion") (CR 61). The CIPA Motion addresses discovery issues that relate to classified information in this case.

**III. ARGUMENT**

   **A.  Defendant Lacks Standing to Litigate the Lawfulness of Surveillance He Believes Was Conducted Under FISA**

Defendant lacks standing to challenge the lawfulness of information the government has affirmed (and the Court is able to confirm) has not and will not be used against him.

   1.  Basic Fourth Amendment Principles Forestall Defendant's Fishing Expedition

The Fourth Amendment exclusionary rule bars the use of evidence in a criminal trial obtained in violation of a defendant's Fourth Amendment rights. See, e.g., United States v. Calandra, 414 U.S. 338, 347 (1974) ("The exclusionary rule was adopted to effectuate the

2

Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'  Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."); see also Elkins v. United States, 364 U.S. 206, 212–13, (1960); Weeks v. United States, 232 U.S. 383, 391 (1914).  Fruits of such evidence are excluded as well.  Alderman v. United States, 394 U.S. 165, 171 (1969); Wong Sun v. United States, 371 U.S. 471 (1963).

A defendant alleging constitutional violations must have standing.  In the Fourth Amendment context, a defendant may challenge the lawfulness of a search only if the government intends to use evidence obtained from that search (or the fruits thereof) against him.  See Simmons v. United States, 390 U.S. 165, 174 (1969) (Since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections).

This makes sense.  Only those parties that can establish an injury or prejudice will have standing to challenge government action, including Fourth Amendment violations.  Brown v. United States, 411 U.S. 223, 229 (1973) (standing to invoke the exclusionary rule has been confined to situations where the government seeks to use such evidence to incriminate the victim of the unlawful search); see also United States v. Kahre, 737 F.3d 554, 565 (9th Cir. 2013) (affirming district court's conclusion that defendant's motion to suppress evidence from a search was moot because the government elected not to use the seized evidence at trial); United States v.

1   Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir. 1993), <u>overruled on</u>

2   <u>other grounds by</u> <u>United States v. Jimenez-Ortega</u>, 472 F.3d 1102,

3   1103-04 (9th Cir. 2007); <u>United States v. Riveria</u>, 2017 WL 1843302,

4   at *1 (S.D.N.Y. May 8, 2017).

5        As the government detailed in its previous filings, the standing

6   requirement is no different when a defendant seeks to challenge the

7   lawfulness of electronic surveillance, whether the electronic

8   surveillance was conducted pursuant to Title III of the Omnibus Crime

9   Control and Safe Street Act of 1968 ("Title III") or FISA.  (CR 83 at

10  10-116).  Thus, regardless of whether a defendant can establish that

11  he was "aggrieved," pursuant to 50 U.S.C. § 1801(k), a defendant

12  lacks standing to litigate in a criminal prosecution the lawfulness

13  of FISA surveillance, under any provision of the statute, when the

14  government affirms that no information obtained or derived from FISA

15  will be used against the defendant.[2]

16             2.   <u>Courts Have Uniformly Denied as Moot Motions to</u>
                    <u>Litigate the Lawfulness of FISA Searches Where the</u>
17                  <u>Government Elects Not to Use FISA Information</u>

18

19       Applying standard Fourth Amendment principles, all other

20  district courts have uniformly denied defendants' motions to litigate

21  the lawfulness of FISA surveillance upon the government's

22  representation that no information obtained or derived from FISA will

23  be used against defendant.  <u>See</u> CR 83 at 16-17; <u>see also</u>, <u>United</u>

24  <u>States v. Saipov</u>, 17-CR-722, Dkt. 212 at 10 n.6 (S.D.N.Y Oct. 29,

25

26       [2] Although the defendant states that the government is arguing
    that an individual cannot be an aggrieved person without receiving
27  FISA notice, the government has been clear on the statutory
    definition of aggrieved person, <u>see</u> CR 83, at 6 n.5, and the
28  relationship between aggrieved person status and the notice
    requirement.  <u>See</u> CR 53, at 2-3.

2019); United States v. Muhtorov, 1:12-CR-33, Dkt. 653 (D. Colo. June 17, 2015); United States v. Qazi, 12-CR-60298, Dkt. 259 at *5 (S.D. Fla. Oct. 29, 2014); United States v. Amawi, 2008 WL 183391, at *2 (S.D. Ohio Jan. 18, 2008); United States v. Abdi, 498 F. Supp. 2d 1048, 1087 (S.D. Ohio 2007).  Defendant lacks standing to litigate the lawfulness of information the government has not used and will not use against him, and his proposed reading of § 1806(f) contravenes Congress's intent (see government's opposition (CR 83 at 12-14)).

In support of his reading of § 1806(f), defendant relies only on cases that are distinguishable.  In Fazaga v. FBI, 916 F.3d 1202 (9th Cir. 2019), for instance, the Ninth Circuit held that FISA displaces the state secrets privilege in certain civil cases, a holding that is inapplicable to this criminal case.  In Fazaga, the plaintiffs seek a civil remedy for certain government investigative techniques that they allege were unlawful.  See id. at 1210.  The Ninth Circuit panel's holding (over which the government is currently seeking en banc review) that they may be able to do so has no applicability here, because in this case, no substantive right or remedy turns on the legality of any electronic surveillance.  Defendants cannot obtain suppression or any other remedy in this proceeding because there is no FISA-obtained or derived evidence to suppress.  And he cannot obtain any civil remedy in this criminal proceeding.

Similarly, defendant's reliance on United States v. Thompson, 752 F. Supp. 75 (W.D.N.Y. 1990), and United States v. Spanjol, 720 F. Supp. 55, 58 (E.D. Pa. 1989) is misplaced.  (CR 88 at 7).  In both cases, the defendants moved for disclosure of what they believed was FISA information, specifically the content of electronic

surveillance.  <u>Thompson</u>, 752 F. Supp. at 75; <u>Spanjol</u>, 720 F. Supp. at 56.  The government represented that no information obtained or derived from FISA would be used against the defendants.  <u>Thompson</u>, 752 F. Supp. at 78; <u>Spanjol</u>, 720 F. Supp. at 57.  The government, however, then elected to proceed under § 1806(f) to seek the court's determination as to the lawfulness of the FISA surveillance and both courts concluded that the FISA surveillance was lawful and that no FISA materials (applications, orders, minimization procedures) or FISA information (content) obtained via FISA needed to be disclosed to defendants.  <u>Thompson</u>, 752 F. Supp. at 78, 82-83 (holding that, "to the extent that Rule 16 allows discovery beyond that constitutionally mandated by <u>Brady</u>, it is inapplicable to discovery of intelligence information under FISA"; <u>Spanjol</u>, 720 F. Supp. at 59 ("In enacting FISA Congress intended to restrict, as much as constitutionally possible, discovery of" the conversations obtained pursuant to FISA).  Thus, the courts endorsed the approach used by the government in those three cases, which was to limit a defendant's access to potentially discoverable FISA collection by seeking a determination under Section 1806 both that the FISA collection was lawful, and that the fruits of the collection need not be turned over to the defense.

In this case, however, the government is not seeking to use Section 1806 to forestall discovery of FISA information.  Instead, to the extent that there exists FISA information relevant to this case, which the government does not concede, the government will comply with any discovery obligations related to any such information.

1

2

        3.   <u>Defendant Is Not Entitled to an Advisory Opinion – the Logical Consequence of his FISA Motion</u>

3        Defendant's FISA Motions are improper because they ask the Court

4  to render precisely the type of advisory opinion prohibited under

5  Article III of the Constitution.  <u>Coal. for a Healthy California v.</u>

6  <u>F.C.C.</u>, 87 F.3d 383, 386 (9th Cir. 1996) ("federal courts have never

7  been empowered to issue advisory opinions.") (citing <u>FCC v. Pacifica</u>

8  <u>Found</u>., 438 U.S. 726, 734–35, (1978).  Assuming, <u>arguendo</u>, that

9  defendant was the target of or subject to FISA surveillance or

10  search, any opinion issued by this Court concerning the lawfulness of

11  FISA authorities would be merely advisory because it would have no

12  effect on the proceedings.

13        On the one hand, assuming the government obtained evidence

14  pursuant to FISA, if the Court reviewed the FISA materials and

15  determined that the FISA orders were lawfully issued and that the

16  government complied with those orders, <u>see</u> 50 U.S.C. § 1806(e), the

17  Court's order would do nothing more than authorize the government to

18  use information it has already affirmed is not a part of its case.

19  On the other hand, if the Court found that the FISA was unlawful or

20  that the government did not comply with the FISA orders, the

21  resulting order directing suppression pursuant to § 1806(g) would

22  have no import because the government has already made clear that no

23  FISA evidence has been or will be used in this case.  In short, there

24  would be nothing to suppress.  Thus, the ultimate ruling defendant

25  seeks is an impermissible "general declaration which does not settle

26  an actual controversy between the parties."  <u>Coal. for a Healthy</u>

27  <u>California</u>, 87 F.3d at 386.

28

**B.   No Remedy Defendant Purportedly Seeks Will Be Served by Disclosure of FISA Materials**

Defendant's demands are also nonsensical:  he seeks disclosure of FISA materials to litigate hypothetical and unsubstantiated discovery and constitutional violations that will not be supported or remedied by the disclosure of FISA materials.  Defendant relies upon a residual clause in § 1806(f) that provides for in camera review by a court of FISA applications, orders, or other materials, "whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States . . . to discover or obtain" FISA materials.  50 U.S.C. § 1806(f).  Defendant cites "Rule 16, Brady v. Maryland and its related cases, the Fourth Amendment, and the Fifth Amendment" as the "other statute or rule" to justify his request.  (CR 57 at 5).  (See CR 83 at 12-18 for discussion of why defendant's reliance on this clause is misplaced).

Putting aside the fact that defendant nevertheless lacks standing to litigate the lawfulness of information the government will not use against him and the fact that his reliance on § 1806(f) contravenes Congress's intent (see government's opposition (CR 83 at 12-14)), defendant's motion fails because disclosure of FISA materials will have no effect on the hypothetical violations he seeks to rectify with disclosure.

1.   The Government's Compliance with Constitutional and Statutory Discovery Obligations Are Unaffected by FISA Litigation

The government's discovery obligations, including those defendant cites as the basis for disclosure, extend to all information in the government's possession, including FISA materials. Here, the government invoked CIPA to ensure the defendant's right to

8

a fair trial is properly harmonized with the government's obligation to protect classified information. United States v. Sedaghaty, 728 F.3d 885, 903 (9th Cir. 2013). Following the Court's review, "relevant and helpful" information will be disclosed to defendant in a manner that protects classified information from unnecessary disclosure. United States v. Klimavicius-Viloria, 144 F.3d 1249, 1261 (9th Cir. 1998) ("In order to determine whether the government must disclose classified information, the court must determine whether the information is 'relevant and helpful to the defense of an accused.' . . . . Under this test, information meets the standard for disclosure 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'") (citations omitted).

## 2.   Disclosure of FISA Materials Will Not Remedy Purported Violations of the Fourth and Fifth Amendments

Here, defendant's reliance on the Fourth and Fifth Amendments is misplaced. As detailed above and in the government's pervious submissions, (CR 53 at 4-11; 83 at 3-10), defendant cannot establish standing to challenge government conduct that does not violate his Fourth Amendment rights. Disclosure of FISA materials defendant believes exist will not assist defendant in suppressing evidence the government has not and will not use against him.

Similarly, disclosure of FISA materials will not remedy Fifth Amendment due process violations defendant alleges. Defendant claims that "due process" entitles him to disclosure of FISA materials in order to participate in the government's "derived" analysis. (CR 57 at 6). As the government has explained previously (see CR 83 at 17-23), defendant's Fifth Amendment claims – which largely echo his

Fourth Amendment claims – do not entitle him to participate in the government's determination of whether evidence is derived from FISA. The Court is well-equipped to confirm the government's representation that no information obtained or derived from FISA has been or will be used against defendant. This analysis is based on classified facts the defendant cannot review. In such situations, district courts regularly make similar fact-based, discovery determinations pursuant to CIPA without defendants' participation. <u>See Saipov</u>, 17-CR-722, Dkt. 212 at 10 and n.6 (S.D.N.Y Oct. 29, 2019) (stating that the government "established to my satisfaction that none of the evidence it intends to introduce--including evidence gathered as a result of Saipov's post-arrest interrogation--was derived from the surveillance at issue" and denying as "moot" the defense motion seeking notice so that he could challenge the lawfulness of the surveillance"). And, as detailed in the government's previous filings, the cases defendant cites to support his "due process" justification for FISA disclosure actually undermine his argument. (<u>See</u> CR 83 at 8-9, 13).

       3.   <u>Disclosure of FISA Materials Will Not Assist Defendant in an Outrageous Government Conduct Motion</u>

Defendant's assertion that disclosure of FISA material is "necessary" to advance an "outrageous government conduct" claim is meritless. (CR 57 at 7-8). Outrageous government conduct that "contravenes the constitutional due process" is a relative of an entrapment defense and can only be invoked when the "fruits" of that outrageous conduct are used against a defendant. <u>See</u> <u>United States v. Ramirez</u>, 710 F.2d 535, 539 (9th Cir. 1983) (citing <u>Hampton v. United States</u>, 425 U.S. 484, 493, (1976)). The Supreme Court has never reversed a criminal conviction on this ground and circuit

1   courts have only done so twice.  Ramirez, 710 F.2d at 539.  In both

2   cases, "the outrageous misconduct was, in effect, the generation by

3   police of new crimes merely for the sake of pressing criminal charges

4   against the defendant."  Id.  Thus, in the rare cases where the

5   government's conduct was deemed "outrageous" to justify dismissal of

6   the indictment or reversal of the conviction, the government relied

7   upon evidence obtained from the "outrageous" conduct against the

8   defendant.[3]

9       Indeed, defendant concedes the limitations of this claim:  "if

10  the government engaged in illegal surveillance of defendant, and

11  subsequently used tainted information to form the basis of the

12  present charges, then defendant would certainly have a basis to move

13  for dismissal of the indictment."  (Id.) (emphasis added)).  The

14  reverse is also true: where, as here, no tainted information formed

15  the basis of the present charges, defendant has no basis to file such

16  a motion.  The disclosure of FISA materials defendant believes exist

17  will not advance an "outrageous government conduct" argument because

18  even if the Court were to determine that defendant were the target of

19  unlawful FISA collection, defendant has suffered no injury because

20

21      [3] Ramirez, 710 F.2d 535 at n.3 ("In United States v. Twigg, 588
22  F.2d 373 (3d Cir. 1978), the indictment was dismissed where the
    government, through an informer, provided the location and all
23  necessary chemicals and equipment for a 'speed' laboratory.  The
    informant was in complete charge of the laboratory; defendant's
24  assistance was minimal and at the specific direction of the
    informant.  Similarly, in Greene v. United States, 454 F.2d 783 (9th
25  Cir. 1971), this court reversed conspiracy and bootlegging
    convictions where government undercover agents helped to reestablish,
26  and then sustain, criminal bootlegging operations that had been shut
    down by prior criminal convictions. 'We do not believe the Government
27  may involve itself so directly and continuously over such a long
    period of time in the creation and maintenance of criminal
28  operations, and yet prosecute its collaborators.'  Id. at 787.").

1  the government's case is not based on information obtained or derived

2  from FISA.

3  **IV.   Conclusion**

4      For the foregoing reasons, defendant's motion for disclosure of

5  FISA materials and to proceed under § 1806(f) should be denied as

6  moot.

7  Dated: February 7, 2020      Respectfully submitted,

8                       NICOLA T. HANNA
                     United States Attorney

9

10                       PATRICK R. FITZGERALD
                     Assistant United States Attorney
                     Chief, National Security Division

11

12                           /s/

13                       ANNAMARTINE SALICK
                     MATTHEW J. JACOBS

14                       VALERIE L. MAKAREWICZ
                     Assistant United States Attorneys

15                       Attorneys for Plaintiff
                     UNITED STATES OF AMERICA

16